**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
NICOLE ARCH,

                                        Plaintiff,                              22-CV-8826 (VF)

                        -against-                                              **OPINION & ORDER**

COMMISSIONER OF SOCIAL SECURITY

                                        Defendant.

-----------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge**

        Plaintiff Nicole Arch seeks judicial review of a final determination by Defendant, the

Commissioner ("Commissioner") of the Social Security Administration ("SSA"), denying Arch's

application for Supplemental Security Income benefits under Title XVI of the Social Security

Act (the "Act"). Before the Court is Arch's motion for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure. See ECF No. 13. For the reasons set forth

below, Arch's motion is **DENIED** and the determination of the Commissioner is **AFFIRMED**.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/6/2024

BACKGROUND[1]

A. **Procedural History**

On January 25, 2017, Arch filed her application for Supplemental Security Income benefits ("SSI"), alleging October 1, 2016, as the onset date of her disability. See ECF No. 10 (SSA Administrative Record ("R.")) at 181. Arch applied for SSI alleging disability based on conditions related to her right shoulder, neck, head, bipolar disorder, depression, anxiety, thyroid, diabetes, sleep apnea, and high cholesterol. Id. at 211. Arch's claim for SSI was initially denied on April 17, 2017, id. at 84, and on June 7, 2017, Arch filed a written request for a hearing before an administrative law judge, id. at 96-97.

On January 14, 2019, Arch and her counsel, Ari Nat, appeared before Administrative Law Judge Michael Stacchini at a hearing in the White Plains, New York. Id. at 34-63. On February 12, 2019, the ALJ issued a written decision, finding that Arch had not been under a disability within the meaning of the Act from October 1, 2016, through the date of the decision. Id. at 7-33. Arch requested that the SSA Appeals Council review the ALJ's decision. Id. at 1. Her request was denied on February 10, 2020. Id. at 1-6.

On April 6, 2020, Arch commenced a civil action seeking review of the administrative determination. Id. at 992; see Case No. 20-CV-2842 (VSB) (RWL), ECF No. 1 (S.D.N.Y.). By Report and Recommendation dated August 3, 2021, the Honorable Robert W. Lehrburger recommended granting Arch's motion for judgment on the pleadings and remanding Arch's case to the Commissioner for further proceedings, because the ALJ had failed to give sufficient consideration to the three opinions of Arch's treating physician, Dr. Syed Hosain. See R. at 991-1023; see also Arch v. Comm'r of Soc. Sec., No. 20-CV-2842 (VSB) (RWL), 2021 WL

---

[1] Page citations herein to documents filed on ECF are to the original pagination in the document.

4200719, at *9-10 (S.D.N.Y. Aug. 3, 2021). On October 6, 2021, the Honorable Vernon S.

Broderick adopted Judge Lehrburger's Report and Recommendation in its entirety. R. at 988-90;

see also Arch v. Comm'r of Soc. Sec., No. 20-CV-2842 (VSB), 2021 WL 4710448, at *1

(S.D.N.Y. Oct. 6, 2021). The Appeals Council vacated Administrative Law Judge Stacchini's

decision on March 9, 2022, and remanded Arch's case to the same administrative law judge "for

further proceedings consistent with the order of the court." R. at 1037-39.

On July 15, 2022, Arch, represented by Christopher D. Latham, again appeared before

Administrative Law Judge Michael J. Stacchini (hereinafter, the "ALJ"). Id. at 904-54. On

August 12, 2022, the ALJ issued a written decision denying benefits. Id. at 877-96.

On October 17, 2022, Arch commenced the instant action seeking judicial review of the

ALJ's decision. See ECF No. 1 ("Compl."). On January 23, 2023, the Commissioner filed the

Administrative Record, which constituted his answer.[2] ECF No. 10. Thereafter, on May 25,

2023, Arch moved for judgment on the pleadings and submitted a memorandum of law in

support of her motion, requesting that the Court remand pursuant to sentence four of 42 U.S.C.

Section 405(g) and (b). ECF Nos. 13-14. On August 22, 2023, the Commissioner submitted his

opposition.[3] ECF No. 19 ("Def.'s Br."). Arch filed her reply on September 13, 2023. ECF No.

20.

---

[2] The named defendant when this action commenced was Acting Commissioner Kilolo
Kijakazi. Martin O'Malley became the Commissioner of Social Security on December 20, 2023.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as
the defendant in this suit. See Fed. R. Civ. P. 25(d) (permitting automatic substitution of a party
who is a public official sued in her official capacity when the public official "ceases to hold
office" while a suit is pending).

[3] In his brief, the Commissioner requests that the Court grant his cross-motion for
judgment on the pleadings. See ECF No. 19 at 20 (Conclusion). The Commissioner, however,
did not file a cross-motion for judgment on the pleadings.

**B.  Medical Evidence**

The parties' memoranda provide summaries of the medical evidence contained in the administrative record. See ECF No. 14 ("Pl.'s Br.") at 6-13; Def.'s Br. at 3-7. Having examined the record, the Court concludes that the parties have accurately stated its contents. Although the parties focus on different aspects of the record at times, there are no inconsistencies in the parties' recounting of the medical evidence. The Court therefore adopts the parties' summaries as complete for purposes of the issues raised in this action. See Collado v. Kijakazi, No. 20-CV-11112 (JLC), 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties' summaries of medical evidence where parties did not dispute recitation of relevant facts); Scully v. Berryhill, 282 F. Supp. 3d 628, 631 (S.D.N.Y. 2017) (adopting parties' summaries where they were "substantially consistent with each other" and neither party objected to the opposing party's summary). The medical evidence in the record is discussed below to the extent necessary to address the issues raised in the pending cross-motions.

**DISCUSSION**

**A.  Legal Standards**

1.  Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks and citation omitted).

2.  <u>Judicial Review of the Commissioner's Decision</u>

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); <u>accord</u> <u>Greek v. Colvin</u>, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); <u>see generally</u> 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Substantial evidence is "more than a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 407 (1971) (quoting <u>Consol. Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>accord</u> <u>Greek</u>, 802 F.3d at 374-75; <u>Burgess v. Astrue</u>, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." <u>Id.</u> (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." <u>Selian</u>, 708 F.3d at 417 (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

      3.  Commissioner's Determination of Disability

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see id. § 1382c(a)(3)(B). In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the

Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" Mongeur, 722 F.2d at 1037 (quoting Gold v. Sec'y of H.E.W., 463 F.2d 38, 41 (2d Cir. 1972)). The Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Id. (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

### Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c). Third, if the claimant has such an impairment, the Commissioner considers whether the medical severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. § 416.920(a)(4)(iii), 416.920(d). If so, the claimant is considered disabled. Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the claimant's impairment at step two, and to determine

whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R § 416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found to have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18 (S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point scaled of none, one or two, three, or four or more." Id. (internal quotations, alterations, and citations omitted).

Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. § 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the

Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted). For SSI applications filed before March 27, 2017, such as Arch's application, the SSA's regulations apply the "treating physician rule," which requires an ALJ to give more weight to the opinions of physicians with the most significant relationship with the claimant.[4] See 20 C.F.R. § 416.927(c)(2); see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004). Under the "treating physician" rule, in general, the ALJ must give "more weight to medical opinions" from claimant's "treating sources" when determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating sources, which include some professionals other than physicians, see id. §§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," id. §§ 404.1527(c)(2), 416.927(c)(2).

Social Security Administration regulations, as well as Second Circuit precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. See Estrella, 925 F.3d at 95-96. At the first step, "the ALJ must

---

[4] On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence for applications filed on or after March 27, 2017. See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5869-70, 2017 WL 168819 (Jan. 18, 2017). As Arch's application was filed in January 25, 2017, those revisions do not apply here. See Conetta v. Berryhill, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019).

decide whether the opinion is entitled to controlling weight." Id. at 95. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess, 537 F.3d at 128 (second alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). "'[M]edically acceptable clinical and laboratory diagnostic techniques' include consideration of '[a] patient's report of complaints, or history, [a]s an essential diagnostic tool.'" Id. (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)).

If the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ "must determine how much weight, if any, to give" the opinion. Estrella, 925 F.3d at 95. In doing so, the ALJ must "explicitly consider" the so-called "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129). An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight to a medical opinion of a treating physician is a procedural error. Selian, 708 F.3d at 419-20.

The ALJ must "give good reasons" in its decision for the weight attributed to the treating physician's medical opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific." LaTorres v. Comm'r of Soc. Sec. Admin., 485 F. Supp. 3d 482, 492 (S.D.N.Y. 2020) (quoting Harris v. Colvin, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016)) (internal quotation marks omitted). The ALJ's failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."

Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129-30); see also Estrella, 925 F.3d at 96.

A "slavish recitation of each and every factor [listed in 20 C.F.R. § 404.1527(c)]" is unnecessary

"where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F.

App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32). Even where

the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a

"'searching review of the record,'" elect to affirm the decision if "'the substance of the treating

physician rule was not traversed.'" Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

The Commissioner is not required to give deference to a treating physician's opinion

where the treating physician "issued opinions that are not consistent with other substantial

evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32

(citation omitted). In fact, "the less consistent [a treating physician's] opinion is with the record

as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)

(citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.

2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.")

(citation omitted).

### Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a

reviewing court. Osorio v. Barnhart, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6

(S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the [Commissioner's] findings are

supported by substantial evidence, the court must uphold the ALJ's decision to discount a

claimant's subjective complaints.'" Id. (quoting Aponte v. Sec'y of Health and Hum. Servs., 728

F.2d 588, 591 (2d Cir. 1984)) (first alteration in original). Still, an ALJ's finding of credibility

"must . . . be set forth with sufficient specificity to permit intelligible plenary review of the

11

record." Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" Id. (quoting Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. Genier, 606 F.3d at 49 (2d Cir. 2010). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. Id. First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. Id.; see also 20 C.F.R. § 416.929(b). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quotation omitted); see also 20 C.F.R. § 416.929(a). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Pena, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).

**B.  The ALJ's Decision**

On August 12, 2022, the ALJ issued his decision, R. at 874-96, finding that Arch was not disabled under the Act. Id. at 895. The ALJ began by explaining the five-step process for determining whether an individual is disabled. Id. at 878-89.

At step one, the ALJ found that Arch had not engaged in substantial gainful activity since October 1, 2016. Id. at 879. At step two, the ALJ found that Arch had twelve severe impairments: (1) degenerative disc disease of the cervical and lumbar spine; (2) "cervicogenic" headaches[5]; (3) migraine headaches; (4) right shoulder tendinopathy; (5) obstructive sleep apnea; (6) obesity; (7) depressive disorder; (8) obsessive compulsive disorder (OCD); (9) bipolar disorder; (10) mood disorder; (11) anxiety disorder; (12) attention deficit hyperactivity disorder ("ADHD"). Id. at 879-80.

At step three, the ALJ found that Arch "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526)." Id. at 880. The ALJ determined that Arch's impairments do not meet or equal the listings in Appendix I, Listing 1.15, or 1.18.  Id. at 880-81. The ALJ also assessed Arch's obesity and found that there was "no evidence in the medical record that [Arch's] obesity" meets the requirements of a listing or the medical equivalency of a listing. Id. at 881. The ALJ also concluded that there was "no indication" that Arch's migraine headaches "medically equal[ed] a Listing." Id.

---

[5] "A cervicogenic headache (CGH) presents as unilateral pain that starts in the neck and is referred from bony structures or soft tissues of the neck. It is a common chronic and recurrent headache that usually starts after neck movement. It usually accompanies a reduced range of motion (ROM) of the neck." Yasir Al Khalili et al., Cervicogenic Headache, Nat'l Library of Medicine (Jan. 2004), https://www.ncbi.nlm.nih.gov/books/NBK507862/#:~:text=A%20cervicogenic%20headache%20(CGH)%20presents,(ROM)%20of%20the%20neck [perma.cc/9AKJ-B3VG].

In assessing Arch's mental impairments, the ALJ applied evidence in the record to each of the "four broad functional areas" (known as "paragraph B" criteria), including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Id. at 881-82. The ALJ concluded that Arch's mental impairments caused mild limitations in all four areas except for concentrating, persisting, or maintaining pace, where the ALJ concluded that Arch had a moderate limitation. Id. The ALJ also concluded that because Arch's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." Id. at 882. Additionally, the ALJ determined that Arch does not meet the "paragraph C" criteria because "the evidence fails to establish the presence of the 'paragraph C' criteria." Id.

Before proceeding to step four, the ALJ found that Arch maintained the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b)." Id. at 883. The ALJ concluded that Arch could "sit for six hours but no more than 40 minutes at a time before being allowed to stand and stretch for one-to-two minutes; stand for two hours but no more than 20 minutes at a time before being allowed to sit for two minutes" and "walk for one hour but not for more than 15 minutes before being allowed to sit for two-to-three minutes." Id. Arch could "occasionally climb ramps and stairs, balance, stoop, kneel, and crawl," but she could "never climb ladders, ropes, or scaffolds." Id. Arch could also "occasionally rotate, flex, and extend the neck," but "never repetitively stoop, crouch, or rotate, flex, or extend the neck." Id. The ALJ defined "repetitive" to mean "no more than two-to-three times in a 15-minute period." Id. Arch also could not engage in "lifting/carrying overhead with right upper extremity," but could "occasional[ly] reach[] overhead with the right upper extremity." Id. Arch must "avoid[] unprotected heights and

14

hazardous machinery." Id. Lastly, Arch "is able to understand, remember and carryout simple routine tasks with regular breaks at two-hour intervals; and make[] decisions and tolerat[e] changes in the work setting related to simple, routine tasks." Id.

In considering Arch's symptoms, the ALJ followed the established two-step process: (1) determining whether there was an underlying medically determinable physical or mental impairment; and (2) if such an impairment was shown, evaluating the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." Id. The ALJ analyzed Arch's impairments, and after considering the evidence, found that even though Arch's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Arch's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Id. at 884. The ALJ also independently evaluated each of the medical opinions and prior administrative medical findings, and determined whether each opinion was accorded "little weight," "some weight," or "great weight." Id. at 887-92.

At step four, the ALJ found that Arch was unable to perform her past relevant work as a teacher aide, nurse assistant, or watch guard/security guard. Id. at 894. At step five, the ALJ considered Arch's "age, education, work experience, and [RFC]," and found that "there [were] jobs that exist in significant numbers in the national economy that [Arch] [could] perform." Id. Based on testimony from a vocational expert ("VE") and in conjunction with the Medical-Vocational Guidelines, the ALJ concluded that Arch was "not disabled" because she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 894-95. The ALJ cited the VE's testimony that given Arch's age,

education, work experience, and RFC, such an individual would be able to perform work as an: (1) ink printer (DOT 652.685-038); (2) preparer (DOT 700.687-062); or (3) carting machine operator (DOT 681.685-030). Id. at 895. Accordingly, the ALJ concluded that Arch "has not been under a disability" within the meaning of the Act "from October 1, 2016, through the date of this decision." Id. (citing 20 C.F.R. § 404.1520(g)).

   **C.  Analysis**

Arch attacks the ALJ's determination on two grounds. First, Arch contends that the ALJ failed to give controlling weight to the opinion of her treating physician, Dr. Hosain. And second, Arch argues that the ALJ failed to consider her "severe cervicogenic headaches" and "severe migraine headaches" in his RFC determination. Pl.'s Br. at 18-24. Neither argument has merit.

   1.  The ALJ complied with the "treating physician" rule.

Dr. Hosain is a pain management specialist who saw Arch approximately 24 times between 2016 and 2022. R. at 423-27, 827-41, 1203-35, 1250-84. On December 19, 2016, Dr. Hosain completed a Doctor's Report for the New York State Worker's Compensation Board. Id. at 425-27. In the report, Dr. Hosain opined that Arch could occasionally lift and carry, but could never push/pull, sit, stand, walk, climb, bend, stoop, squat, kneel, reach, drive, operate machinery, or be exposed to temperature extremes or high humidity. Id. at 426. Dr. Hosain also opined that Arch was "unable" to perform sedentary work and stated later in the opinion that Arch has "restricted range of motion in [her] neck." Id. at 426-27.

A year later in Dr. Hosain's physician progress note, on December 20, 2017, Dr. Hosain opined that Arch was limited to sitting in front of a video screen for only 10-15 minutes, sitting for only 30-45 minutes in total, standing for 20 minutes, and could not lift, push, or pull more

16

than 5-10 pounds. Id. at 827. Although Dr. Hosain did not directly indicate the cause of these limitations, he stated in his progress note that Arch had "persisting neck pain" and "limitation of range of motion of her head secondary to pain in the neck." Id.

Then, on January 2, 2019, Dr. Hosain opined in a "Physical RFC Assessment" that Arch could occasionally lift and carry up to five pounds, stand/walk for less than an hour in an eight-hour workday, and sit for less than two hours in an eight-hour workday. Id. at 872. Dr. Hosain also believed that Arch was not able to perform all postural movements, except for occasional balancing, and that she could not reach, push, or pull. Id. at 873. Dr. Hosain stated that these limitations existed since 2013. Id. Dr. Hosain also opined in a "Mental RFC Assessment" that Arch had "poor" ability to perform complex or detailed instructions due to her "depression symptom." Id. at 870-71. Dr. Hosain opined that Arch had "poor" ability to deal with "public and work stress," function independently, maintain attention and concentration, behave in an emotionally stable manner, relate socially, and demonstrate reliability. Id. However, Dr. Hosain did not provide an explanation for these opinions. Id.

Under the "treating physician" rule, the ALJ must generally give "more weight to medical opinions" from a claimant's "treating source"—as defined in the regulations—when determining whether the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); accord Morales v. Berryhill, 484 F. Supp. 3d 130, 142 (S.D.N.Y. 2020). However, if there are genuine conflicts in the medical evidence, the Commissioner may resolve them and find that the treating physician's opinion is not entitled to controlling weight. Monroe v. Comm'r of Soc. Sec., 676 F. App'x. 5, 7 (2d Cir. 2017) (summary order) (citing Veino, 312 F.3d at 588). Stated differently, the opinion of the treating physician is not entitled to controlling weight where the opinion is "not consistent with other substantial evidence in the record" or the opinion is not

well-supported. <u>Halloran</u>, 362 F.3d at 32; <u>see also</u> <u>Ratliff v. Barnhart</u>, 92 F. App'x 838, 840 (2d

Cir. 2004). "When controlling weight is not given to a treating physician's assessment, the ALJ

must consider the following factors," also known as the <u>Burgess</u> factors: (1) the length of

treatment relationship and frequency of examination; (2) the nature and extent of the treatment

relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the

record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant

factors." <u>Monroe</u>, 676 F. App'x at 7 (citing 20 C.F.R. § 404.1527(c)). The ALJ must

comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

<u>Id.</u> (citation omitted).

In his assessment of the medical evidence, the ALJ considered the opinion evidence of

Dr. Hosain and accorded his opinions "little weight." R. at 890-92. The ALJ explicitly identified

Dr. Hosain as a treating physician and recognized him as a specialist in pain management. <u>Id.</u> at

891. The ALJ noted that it was "indisputable that Dr. Hosain [was Arch's] treating pain

specialist since 2016, examined [Arch] bi-monthly, and that he has prescribed [Arch]

medications for headaches, back pain, and neck pain for over five years." <u>Id.</u> The ALJ further

recognized that "the length and nature of the treating relationship and Dr. Hosain's specialization

weigh in favor of according his opinion significant weight and/or controlling weight." <u>Id.</u> The

ALJ thus explicitly considered the first, second, and fifth <u>Burgess</u> factors in his assessment of the

weight to accord Dr. Hosain's opinions.

In consideration of the third factor, the ALJ found that Dr. Hosain gave "scant objective

evidence supporting his opinions" because "none of his opinions actually cite objective

examination findings he made supporting the extreme limitations he found." <u>Id.</u> at 891. To be

sure, the ALJ discussed this factor in only "a summary fashion." <u>See</u> <u>Hutchings v. Berryhill</u>, No.

18

18-CV-1921 (PAE) (KHP), 2019 WL 5722478, at *10 (S.D.N.Y. June 28, 2019) (finding that the ALJ noted the second and third factors in a summary fashion when he found that the treating physician did not support his opinion with objective medical information or reports of his own examinations of the plaintiff). But, the Second Circuit does not require "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." Atwater, 512 F. App'x at 70. And here, the ALJ is correct that Dr. Hosain, in his opinions from 2016, 2017, and 2019, did not cite to any objective examinations findings to support his opinions. R. at 426-27, 827, 870-73. For instance, in Dr. Hosain's "Mental RFC Assessment" from January 2, 2019, Dr. Hosain opined that Arch had "poor" ability to deal with "public and work stress," function independently, maintain attention and concentration, behave in an emotionally stable manner, relate socially, and demonstrate reliability. Id. at 870-71. However, Dr. Hosain did not provide an explanation for these opinions and did not include "medical/clinical findings" to support that assessment. Id.

The ALJ also discussed the fourth Burgess factor and provided specific citations to the record in support of his conclusion that Dr. Hosain's opinions are inconsistent with Dr. Hosain's own objective findings and diagnostic testing. Id. at 891-92. For example, during Dr. Hosain's bi-monthly examinations of Arch from 2016 to 2022, Dr. Hosain reported no acute distress with intact alertness, intact motor strength of all extremities, normal gait, intact sensation, normal mood, and normal attention and concentration. Id. at 891 (citing R. at 353, 357, 827, 830, 834, 837, 839, 1203-05, 1208, 1212, 1216, 1220, 1228, 1231). The ALJ found these findings inconsistent with Dr. Hosain's opinion that Arch could never perform sedentary work, push/pull, sit, stand, walk, climb, bend, stoop, squat, kneel, reach, drive, operate machinery, or be exposed to temperature extremes or high humidity. Id. The ALJ also found the findings inconsistent with

Dr. Hosain's opinion that Arch was not able to deal with "public and work stress," function independently, maintain attention and concentration, perform complex or detailed instructions, behave in an emotionally stable manner, relate socially, or demonstrate reliability. Id. In addition, the ALJ found Dr. Hosain's opinion that debilitating pain prevented Arch from performing sedentary work activity or simple decision-making inconsistent with the findings of Arch's psychiatrist, Katherine McCarthy, who observed that Arch could "easily" perform "serial sevens."[6] Id. at 892 (citing R. at 1314, 1323). Furthermore, at the administrative hearing on July 15, 2022, Arch confirmed that Dr. Hosain asked her how long she could sit, stand, lift, reach, and bend, and he recorded her responses. Id. at 938-39. The ALJ therefore expressly gave Dr. Hosain's opinion less than controlling weight, in part, because Dr. Hosain's opinions from his physician reports were based on Arch's subjective reports, rather than Dr. Hosain's own objective findings, and because Arch's subjective complains were inconsistent with Dr. Hosain's own objective findings. Id. at 891-92. The ALJ did not err in assigning less weight to Dr. Hosain's opinion based on this conclusion. See Roma v. Astrue, 468 F. App'x 16, 19 (2d Cir. 2012) (affirming ALJ's decision to give less weight to a treating physician's opinion because it was based largely upon the subjective statements of the claimant).

Arch points to six medical entries to argue that Dr. Hosain's opinions were "well supported by his own treatment notes and other medical records." Pl.'s Br. at 19-20. These entries are MRIs from March 15, 2016, and July 19, 2016, physical examinations of Arch from October 2017, March 2017, December 2017, May 2018, July 2019, and October 2019, and an X-ray that "revealed . . . supraspinatus," "disc protrusion," increased pain on the right side of the

---

[6] "Serial sevens" is part of a mental-status evaluation where a patient is "asked to subtract 7 from 100 in a serial fashion." The test measures "information processing speed." Mark A. Williams et al., Serial 7s and Alphabet Backwards as Brief Measures of Information Processing Speed, 2 Archives of Clinical Neuropsychology 651, 651-52 (1996).

neck, increased tenderness in numerous areas, and decreased range of motion and strength. Id. But the ALJ is not "required to mention or discuss every single piece of evidence in the record." Zabala v. Astrue, No. 05-CV-4483 (WHP), 2008 WL 136356, at *4 (S.D.N.Y. Jan. 14, 2008) (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir.1983) (per curiam)) ("Where the evidence of record permits the court to glean the rationale of an ALJ's decision, the ALJ is not required to explain why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.") (alterations and internal quotation marks omitted). And, regardless, the ALJ relied on ample other evidence in the record, as discussed, that supports a finding that Dr. Hosain's opinion should be entitled to less weight. See Martinez v. Comm'r of Soc. Sec., No. 21-CV-11054 (SLC), 2023 WL 2707319, at *14, 16 (S.D.N.Y. Mar. 30, 2023) (finding that although there was some evidence in the record consistent with the treating physician's opinion, the ALJ did not err in assigning the treating physician's opinion little weight).

Lastly, the ALJ considered that Dr. Hosain's treatment had been "conservative" despite the severity of the limitations in his opinions. The ALJ found that Dr. Hosain's treatment consisted "largely" of prescribing Arch with "the same medications since 2016, with reports of some improvement." R. at 891. Despite the conservative treatment, the ALJ noted that in 2021 Arch reported 40% pain improvement with stretching and muscle relaxers and that a lidocaine patch and etodolac for lumbar pain provided "tremendous help" and that she experienced "up to 75% relief." Id. (citing R. at 1250-52, 1284). The ALJ also considered the report from Dr. Hosain on August 4, 2021, which stated that Arch reported that the relief she experienced from the lidocaine patch "improv[ed] her ability to stand straight and bend to the left, right and forward." Id. (citing R. at 1250). Although Arch argues that Dr. Hosain's opinion should not be

discounted "merely because he has recommended a conservative treatment program," Pl.'s Br. at 21, the ALJ rejected Dr. Hosain's opinions because Arch's symptomology was effectively addressed (and improved) by that conservative treatment. See Tuttle v. Berryhill, No. 17-CV-06419 (MAT), 2018 WL 1932610, at *4 (W.D.N.Y. Apr. 24, 2018) ("While an ALJ may not discount a treating physician's opinion merely because he [or she] has recommended a conservative treatment regimen, a conservative course of treatment may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record.") (internal citations and quotation marks omitted); see also Ayala v. Berryhill, No. 18-CV-124 (VB) (LMS), 2019 WL 1427398, at * 9 (S.D.N.Y. Mar. 12. 2019) (citing Jackson v. Berryhill, No. 17-CV-6268 (FPG), 2018 WL 3306193, at *6 (W.D.N.Y. July 5, 2018) ("The ALJ did not discount [the treating physician's] opinions solely because she recommended conservative treatment; as discussed previously, he also discounted her opinions because they were inconsistent with the record evidence and based on [plaintiff's] subjective complaints, which the ALJ found not credible.")); Schmidt v. Colvin, No. 15-CV-2692 (MKB), 2016 WL 4435218, at *12 (E.D.N.Y. Aug. 19, 2016) (upholding ALJ's decision to accord "little weight" to opinion of treating psychiatrist because treatment records showed that "Plaintiff reported responding well to his medication"); Evans v. Comm'r of Soc. Sec., 110 F. Supp. 3d 518, 536 (S.D.N.Y. 2015) (finding substantial evidence to support ALJ's decision to give "little weight" to opinion of treating therapist where plaintiff had a "conservative treatment history," and treatment records "consistently show[ed] stable mental examination findings and that [the plaintiff's] anxiety [was] controlled with Xanax") (internal quotation marks omitted).

In sum, the ALJ adequately explained and provided good reasons for affording less than controlling weight to the opinion of Arch's treating physician.

2.   The ALJ properly considered Arch's severe headaches in his RFC assessment.

Arch contends that the ALJ's RFC determination is flawed because the ALJ did not consider Arch's cervicogenic headaches. Pl.'s Br. at 22-23. Arch argues that the ALJ failed to include a limitation for headaches in the RFC when a "reasonable person would expect some limitations for being off task when a headache occurs or some allowance for loss of concentration." Id. at 23. Arch's argument is meritless.

Under the Commissioner's regulations, the ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In general, the claimant has the burden to provide the evidence for the ALJ to use to make an RFC determination. Id. In making the RFC determination, the Second Circuit has consistently warned ALJs not to "arbitrarily substitute [their] own judgment for competent medical opinion." Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (quoting McBrayer v. Sec'y of Health and Hum. Servs., 712 F.2d 795, 799 (2d Cir. 1983)); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). However, a medical opinion providing the specific restrictions reflected in the ALJ's RFC determination is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." Cook v. Comm'r of Soc. Sec., 818 F. App'x 108, 109-10 (2d Cir. 2020) (quoting Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013)). 20 C.F.R. § 404.1527(d)(2) makes clear that the claimant's RFC is an issue reserved to the Commissioner, and it is well-settled that it is "within the province of the ALJ to resolve" conflicting findings in the record. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

Here, although the ALJ's RFC determination did not explicitly include any limitations for Arch's headaches, the RFC finding is based on substantial evidence. The ALJ's RFC assessment specifically cites to Arch's own testimony and medical facts in the record concerning her headaches. Specifically, the ALJ discussed Arch's testimony in which Arch stated that she has headaches two-to-three times per week that could last for several days straight. R. at 884. The ALJ also cited to Arch's "Function Report" in which she mentioned that her symptoms— including her headaches—cause difficulties paying attention, getting along with others, and handling stress or changes in her schedule. Id. at 882 (citing R. at 230). Additionally, the ALJ also cited an examination from Arch's treating physician for neck pain, Dr. Russel Chasin, where he confirmed that Arch experienced decreased motion in the cervical spine and tenderness. Id. at 884 (citing R. at 755).  However, the ALJ also cited the assessment of Arch's headaches by Dr. Faskowitz's, a headache specialist, who observed, on multiple occasions, that Arch was not in acute distress despite her reports of "8/10" pain. Id. at 884 (citing R. at 340, 342-43). Additionally, the ALJ cited Dr. Faskowitz's decision to continue Arch on the medication tramadol for "severe breakthrough pain" and tizanidine and advised her to continue physical therapy. Id. at 884-85 (citing R. at 343). What's more, the ALJ noted that Arch reported to Dr. Faskowitz that she experienced "0/10" neck pain when she engaged in physical therapy, which is significant because the type of headaches Arch suffers from start with neck pain. Id. at 885 (citing R. at 340). Lastly, the ALJ stated that he had "considered the impact of [Arch's] headaches pursuant to SSR 19-4p" but that the "record routinely reflected no acute distress, a 'substantial decrease' in intensity with medication, and that [Arch's] headaches were assessed as 'not intractable'" by Dr. Hosain. Id. at 894.

To the extent that Plaintiff argues that the ALJ did not consider Arch's cervicogenic headaches in his RFC, Pl.'s Br. at 22, the ALJ's decision is supported by substantial evidence. Arch testified that she has headaches "two to three times a week" and the headaches sometimes last "three days." R. at 941-42. Arch also testified that her headaches lead to dizziness and nausea. Id. at 46. The record reflects that on April 24, 2014, Dr. Faskowitz diagnosed Arch with cervicogenic headaches, id. at 509, and on June 2, 2016, recommended Botox and for Arch to continue physical therapy, id. at 343-44. During that visit, although Arch reported her pain to be an 8/10, Dr. Faskowitz noted that Arch did not appear to be experiencing any apparent distress. Id. at 342. Then, when Arch visited Dr. Faskowitz again on September 1, 2016, the record indicates that Arch appeared to be in "[n]o apparent distress." Id. at 339. The record also reflects that when Arch was being evaluated at the "Center for Stress" from April 2017 to May 2018, her memory and concentration were "within normal limits." Id. at 817-26. Additionally, Dr. Hosain observed that Arch had normal attention and concentration in August 2021, December 2021, March 2022, and May 2022. Id. at 1252, 1259, 1263, 1267. Additionally, on May 6, 2020, Dr. Hosain's medical report reflects that Arch was experiencing a "substantial decrease in the intensity of her headaches after increasing" the dosage of her medication and she reported "no side effects" from the increased dosage. Id. at 1217. Therefore, a review of the record as a whole supports the ALJ's decision not to include a specific limitation in the RFC for Arch being off task to due headaches. See Paz v. Comm'r of Soc. Sec., No. 15-CV-6353 (AJN) (DF), 2017 WL 1082684, at *36 (S.D.N.Y. Feb. 1, 2017) (finding that the ALJ did not have to include regarding concentration in the RFC when the decision to exclude it was supported by substantial evidence). In short, the ALJ weighed the medical evidence and reached an RFC finding that was both supported by substantial evidence and consistent with the record as a whole.

Lastly, Arch bears the burden of showing that an additional limitation, because of Arch's headaches, was warranted. See Selian, 708 F.3d at 418. Arch has not satisfied her burden. She simply cites to the same evidence the ALJ noted in his opinion pertaining to this particular impairment. Pl.'s Br. at 22-24. The ALJ supported his determination with evidence in the record, namely physician findings of Arch's intact memory and concentration, as well as Arch's own testimony in which she indicated that she can drive, read, and interact with friends and family, which provides further evidence of Arch's ability to concentrate and undermines her claim regarding the severity of her headaches. R. at 42, 43, 882, 1252, 1259, 1263, 1267. The ALJ's determination in this respect was thus supported by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, Arch's motion for judgment on the pleadings is **DENIED** and the determination of the Commissioner is **AFFIRMED**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 13 and to terminate the case.

**SO ORDERED.**

DATED:      March 6, 2024
            New York, New York

_____
VALERIE FIGUEREDO
United States Magistrate Judge